1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**

Continued Detention Hearing on January 2, 2008

1                UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3

4  - - - - - - - - - - - - - - - - -

5  UNITED STATES,                    )

6                Plaintiff,          )

7                                    )   CASE NO.

8  V.                                )   2007R00833

9                                    )

10 GUZMAN-BAEZ,                       )

11                Defendant.         )

12 - - - - - - - - - - - - - - - -

13

14

15                TRANSCRIPT OF PROCEEDINGS

16 BEFORE THE HONORABLE MAGISTRATE JUDGE NANDOR J. VADAS

17                WEDNESDAY, JANUARY 2, 2008

18

19

20

21                BEHMKE REPORTING & VIDEO SERVICES

22                    BY:  JILL BAIONI, CSR #8812

23                    160 SPEAR STREET, SUITE 300

24                SAN FRANCISCO, CALIFORNIA  94105

25                            (415) 597-5600

1

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFF:

 4           UNITED STATES DEPARTMENT OF JUSTICE

 5           BY:  DEBORAH DOUGLAS, ESQ.

 6           1301 Clay Street, Suite 340S

 7           Oakland, California  94612-5217

 8           (510) 637-3680

 9

10   FOR THE DEFENDANT:

11           LAW OFFICES OF STEVEN F. GRUEL

12           BY:  STEVEN FRANCIS GRUEL, ESQ.

13           655 Montgomery Street, Suite 1700

14           San Francisco, California  94111-2633

15           (415) 989-1253

16

17           MARTIN RESENDEZ GUAJARDO, ESQ.

18           555 Clay Street

19           San Francisco, California  94111

20           (415) 398-3852

21

22

23

24

25
```

2

```
 1                        ---oOo---
 2          COURT CLERK:  Calling criminal cases 07-0794,
 3   07-797, United States versus Jose de Jesus
 4   Guzman-Baez.
 5          MR. GRUEL:  Good morning, your Honor.  Steven
 6   Gruel on behalf of Mr. Guzman-Baez, who is present --
 7   who is not present but he's in custody and hopefully
 8   before the Court in short order.
 9          THE COURT:  Mr. Gruel and --
10          MR. GUAJARDO:  Good morning, your Honor.  I'm
11   Martin Guajardo.
12          THE COURT:  Guajardo, good morning.
13          MS. DOUGLAS:  Good morning, your Honor.
14   Deborah Douglas representing the United States.
15          MS. VASQUEZ:  Ramona Vasquez, Spanish
16   interpreter.  I have been sworn.
17          MR. GRUEL:  Can we have one moment with him?
18          THE COURT:  Sure.
19          Counsel, I have had a chance to
20   (unintelligible).
21          MR. GRUEL:  Yes.
22          THE COURT:  And I remember the excellent
23   presentations that both parties made at the last
24   hearing.  And so I think it's pretty fair that we
25   might just have to (unintelligible).  Very simple.  I
```

1 would most likely bond your client out but for the
2 immigration.  I think (unintelligible) probably a
3 $50,000 bond with 25,000 secured by property, I
4 believe either a friend, coworkers.

5        MR. GRUEL:  Mr. Fuentes (phonetic) is present
6 again, your Honor.  Most of the family came up from
7 the Los Angeles area as well but not all of them could
8 attend.  But Mr. Fuentes is in the Bay Area, owns his
9 own business, if I understand correctly,
10 (unintelligible) $25,000 (unintelligible).

11        THE COURT:  And the current rental property
12 that your client indicated is his current residence;
13 is that correct?

14        MR. GRUEL:  That is also correct.

15        THE COURT:  Then I would al- -- probably ask
16 for electronic monitoring.

17        But here's the issue.  And this is one -- you
18 know, we go back and forth in these cases all the
19 time.  It's the same issue.  It's if I release him out
20 of custody here, then I have a problem of him going
21 before the immigration court downtown.  And if they
22 remand him into custody, there's nothing to hold him,
23 he's gone, and then the government is unable to go
24 forward with their case.  And so the court is always
25 leery of doing it.

1           Perhaps, Counsel, maybe it would be best to
2  hear from his immigration lawyer?  I'll leave it up to
3  you.
4           MR. GRUEL:  He's certainly expert in that
5  area, your Honor.  And I'll let Mr. Guajardo explain
6  that.
7           I would, however, note again that
8  Mr. Guzman-Baez's significant other, who is in the
9  country, allegedly --
10          THE COURT:  I remember -- I remember the
11 presentation.  I'm not saying --
12          MR. GRUEL:  Yeah.  I'll let -- I'll let him
13 speak because I think he has a better grasp on that
14 issue than I do.
15          MR. GUAJARDO:  Your Honor, we were here with
16 Maria Ramirez, who's present in the courtroom, last
17 time.  And Maria Ramirez you could say stands in a
18 very much similar position to Mr. Guzman from an
19 immigration vantage point.  They have been here in the
20 United States for approximately 13 years.
21          The agency recognizes she was here without
22 documents.  They proceeded to take her into custody,
23 issue what's referred to as a "charging document" and
24 notice to appear, and served it on her.  And at the
25 same time made the decision to release her on her own

5

1  recognizance.  Now, whether that's because she's seven
2  months pregnant or whether they know where to find her
3  since this investigation is now coming up on about a
4  year and a half that it's been ongoing, whatever their
5  decision was, whatever it was based on, the decision
6  was made to release her.

7          Immediately upon her being released, those
8  documents were presented to us, to my office, and we
9  proceeded to file on her behalf what she's entitled to
10 as the agency and that is if she's been here for at
11 least 10 years, she made an application for permanent
12 residence, which typically is referred to as
13 "cancellation of removal."  I provided Ms. Douglas
14 last time a file-stamped form for that relief.  And in
15 addition to that, also a form for work -- for a work
16 permit, that's typically referred to as an "employment
17 authorization document" to make that application,
18 which is Form I-765.  So those two forms, those two
19 applications, were filed with the immigration court
20 since she is not in custody.

21          In the case of Mr. Guzman, what typically
22 will happen -- and I'll try to wrap this up in about
23 the next two minutes, literally.

24          THE COURT:  No, go ahead.

25          MR. GUAJARDO:  Okay.  But what will happen

6

```
 1   for him is that once the bond is posted here he will
 2   be shuttled over to the immigration -- to the
 3   immigration judge.  There's two judges, typically,
 4   handling these cases, Judge Yamaguchi and Judge Murry.
 5   The question for them to determine is whether -- once
 6   the charging document is issued, he's served, he's in
 7   front of them, he's not going out in the street, we
 8   all know that.  But he'll be in immigration custody.
 9   Is whether Mr. Guzman is statutorily eligible for bond
10   or he is not eligible for bond.
11           There's two sections that create detention or
12   release from immigration custody and that's 236(c) and
13   236(a).  236(a) runs parallel to the (unintelligible)
14   flight and danger, similar considerations that are
15   made here.  236(c) is that section that focuses on the
16   commission of aggravated felonies, crimes involving
17   moral turpitude and the like.
18           THE COURT:  We don't have that here.
19           MR. GUAJARDO:  We do not have that, as
20   Pretrial --
21           THE COURT:  This is basically a case -- don't
22   misunderstand.  I make light of this, Ms. Douglas.
23   This is basically a case of fabricating and using
24   false documentation to stay within the country and to
25   assist employees to work in a business.
```

```
 1           MR. GRUEL:  I'd make one distinction.
 2  There's no charge that Mr. Guzman-Baez was trafficking
 3  in any counterfeit documents.  He may have had
 4  counterfeit documents for his own personal use.
 5  (Unintelligible) --
 6           THE COURT:  But he had a group of -- group of
 7  employees who were also similarly situated.  Again, in
 8  a cabinet shop.
 9           MR. GRUEL:  That's correct.
10           THE COURT:  I noted in -- in the prebail
11  report that he has currently 40, $45,00 contract out.
12  He obviously realizes that without a work permit he
13  is --
14           MR. GRUEL:  (Unintelligible.)
15           THE COURT:  -- (unintelligible) from doing
16  that and that that would be a violation.  If he works
17  without the appropriate work documentation, that would
18  be a violation (unintelligible).
19           MR. GRUEL:  That's correct.
20           THE COURT:  Now, here's -- here's the court's
21  problem.  And I believe it's correct.  There's no way
22  to fashion a bond that would allow me to, quote, "let
23  him go and hold onto him at the same time."  I hate
24  saying that.  But what troubles the court is that
25  Judge Yamaguchi or Judge Murry, who have discretion in
```

8

```
 1  their courtroom to determine what they wish to do with
 2  defendants that are before them, if I release him
 3  outright then I have no say over that and neither does
 4  Ms. Douglas.  That's the -- that's the problem.
 5          MR. GUAJARDO:  Mr. Gruel and I -- if I may
 6  for a moment, your Honor.  Mr. Gruel and I have worked
 7  another case similarly situated to where we have the
 8  tension with immigration and the release from federal
 9  custody.  And it falls -- the responsibility then
10  falls on us to work with the agency in the event --
11  let's say in the unlikely event that he is not
12  bondable, if you will.  If he's not released on bond,
13  then to bring him back over here.  Because it makes
14  absolutely not a lot of sense to keep him in
15  immigration custody and not earning any credits
16  towards ultimately, if it comes to pass, the amount of
17  time that he would be given credit for.  So it
18  behooves him to move over to the other venue, see if
19  he can secure a bond.  And if bond is not secured
20  then -- then it falls on both Mr. Gruel and I to
21  immediately move him back over here.
22          THE COURT:  When is your detention hearing
23  set for Mr. Guzman, if you have one already?
24          MR. GUAJARDO:  We don't have one and that
25  cannot occur until he actually moves over to
```

1   immigration.  So that is the first step.

2              And the irony not only for Mr. Guzman but for

3   Ms. Ramirez, the irony for many, many individuals, the

4   12 million non citizens --

5              THE COURT:  Undocumented aliens.

6              MR. GUAJARDO:  -- undocumented aliens that

7   are in this country, the sad irony is that if the

8   agency went out and picked everybody up and issued

9   charging documents for those who have been here ten

10  years, they all would -- assuming they don't have

11  criminal backgrounds -- they may all be entitled to

12  make an application for work authorization, may be

13  entitled to make an application, assuming they have

14  children, for permanent residence.  But that's

15  another -- another issue.

16             MR. GRUEL:  Let me add one other fact that

17  you might consider, your Honor, is the next date in

18  this case is before Judge Jensen on January 26.  It's

19  the 2nd.  I would imagine that if the Court sets a

20  bond (unintelligible) --

21             THE COURT:  (Unintelligible.)  January 26?

22             MR. GRUEL:  Yes.

23             THE COURT:  That's -- it's wrong.  It's

24  Saturday.

25             MR. GRUEL:  What am I looking at?  It's

 1  upside down.

 2          MS. DOUGLAS:   January 25th.

 3          THE COURT:   Oh, all right, Friday.

 4          MR. GRUEL:   I meant Friday.   The last Friday

 5  of that month, before Judge Jensen.

 6          It would be my expectation that should he be

 7  bonded out from this court he will be removed over to

 8  the INS -- or Department of Homeland Security, in

 9  their custody.   I think Mr. Guajardo would agree that

10  he would be having this hearing before Judge Murry or

11  Judge Yamaguchi well before the 25th and that before

12  we are back before Judge Jensen we will know whether

13  he has been bonded out or not.   As Mr. Guajardo

14  mentioned, if he's not gonna be bonded out I would

15  withdraw or maybe bring some sort of papers back

16  before this court to have him brought back to federal

17  custody or withdraw our application for release

18  because he would be earning credit while in custody

19  now in this venue (unintelligible).

20          THE COURT:   I'll let Ms. Douglas object to

21  it.

22          Go ahead.

23          MS. DOUGLAS:   Your Honor, the government

24  (unintelligible) --

25          THE COURT:   Please.

1          MS. DOUGLAS:  -- make a record.  The way I

2    understand the Court this morning is the Court intends

3    to detain this defendant.  We want to make a record.

4    As the Court will recall at the last court proceeding

5    the only -- government only started its presentation.

6    The Court wanted the government to wait until after

7    the Pretrial Services report was completed.

8          THE COURT:  Which I have read in detail.

9          MS. DOUGLAS:  The government would like to

10   make a full presentation for the record.

11         Defendant -- the government would submit and

12   would concur with Pretrial Services that defendant is

13   a risk of flight by a preponderance of the evidence

14   considering the factors (unintelligible) 3142,

15   Paragraph G, referring to the nature and circumstances

16   of the offense charged, the weight of the evidence,

17   and the history and characteristics of the person.

18         The defendant has -- defendant has been in

19   detention since his arrest on November 6, 2007.  He

20   has been charged in a felony indictment with 11

21   counts.  Eight counts of harboring, one count

22   possession of counterfeit --

23         THE INTERPRETER:  Excuse me.  Counsel needs

24   to slow down, please, for the interpreter.

25         MS. DOUGLAS:  Sure.

1          THE INTERPRETER:  Thank you.

2          MS. DOUGLAS:  Eight counts of harboring, one

3  count possession of counterfeit immigration documents,

4  and two counts of fraudulent use of social security

5  numbers.  In addition, defendant has also been charged

6  in a 16-count misdemeanor information with eight

7  counts of employing illegal aliens and eight counts of

8  continuing employment of illegal aliens.  Defender --

9  detainer (unintelligible) detainer has been lodged, as

10 this Court is aware.

11         Not only is defendant an illegal alien from

12 Mexico, his activities in the United States are

13 permeated with fraud, activities involving a number of

14 federal, state, or local government agencies.

15 Department of Homeland Security, Social Security

16 Administration, Internal Revenue Service, California

17 Employment Developmental Department, the City of

18 Oakland Business Tax Office.  Fraud and concealing go

19 directly to the issue of risk of flight.  In addition,

20 defendant has three failures to appear based upon

21 various traffic violations in 1999, 2002, and 2004.

22         Defendant has the means and ability to obtain

23 false identification documents, false birth

24 certificate, false immigration documents.  He has

25 committed perjury under oath in declarations submitted

13

1   to the City of Oakland Business Tax Office.  He has

2   also submitted false social security numbers.

3          Based upon -- when defendant was arrested on

4   November 6, 2007 he possessed a Mexican driver's

5   license, a Mexican consular identification card.  We

6   have -- we have copies of those which we will submit

7   to the Court in a few minutes.

8          THE COURT:  He's a Mexican citizen.

9          MS. DOUGLAS:  Correct.

10          In addition, defendant admitted post-Miranda

11   that he is an illegal alien from Mexico with no valid

12   document.  Defendant can easily, as he has

13   demonstrated, easily move in and out of the country.

14   Only 15 days prior to defendant's arrest November 6,

15   2007 he -- he was in Mexico and came back into the

16   United States.  And that's only 15 days prior to his

17   arrest, without being inspected by immigration

18   officials.  ICE has -- ICE has stated the obvious to

19   me, that it's very easy to cross from the

20   United States to Mexico through the land border

21   without being detected.

22          Defendant -- on November the 6th, 2007

23   defendant had nine employees.  Every single one of

24   those employees are illegal aliens, including

25   defendant's wife Maria Ramirez.  On that date ICE

14

```
1   interviewed eight employees, all of whom admitted that
2   they are illegal aliens. All eight employees provided
3   incriminating evidence against the defendant.
4           I'd like to give the Court two examples,
5   which goes right to the heart of fraud. One of the
6   defendants, Mr. Velasco Toja (phonetic), told ICE
7   agents that when he showed the defendant his Mexican
8   identification defendant instructed him: Go to
9   International Avenue in Oakland and pay for a forged
10  social security card and a forged permanent resident
11  card, which Mr. Velasco did. He bought those
12  fraudulent documents, he showed them to defendant, who
13  then permitted him to work at Pepe's Cabinets.
14          As another example, defendant's secretary,
15  Ms. Gambino Perez (phonetic), stated to ICE agents
16  that she filled out a job application to work at
17  Pepe's Cabinets and provided defendant with her
18  Mexican matricula and a fake social security card that
19  her friend had obtained for her. Defendant took a
20  copy of the social security card and asked Gambino if
21  the social security card was good and she told him no.
22          The -- Pepe's Cabinets, defendant's business,
23  was searched by federal agents on November 6, 2007.
24  There were numerous documents implicating the
25  defendant, including five identification cards, the
```

15

1  two Mexican identification cards that the government
2  has already mentioned, defendant had a fraudulent
3  California driver's license, a fraudulent permanent
4  resident card, and a valid California driver's
5  license.  A check with DMV indicated that defendant
6  was able to obtain a valid California driver's license
7  by submitting a U.S. birth certificate.  That U.S.
8  birth certificate was fraudulent because defendant was
9  not born in the United States.  He was born in Mexico.
10          Also during the search of defendant's
11  business at least seven additional fraudulent
12  permanent resident cards belonging to his employees
13  were seized.  Two cards belong to current employees,
14  five belong to past employees.  In addition to the
15  fraudulent permanent resident cards, there are at
16  least -- copies of at least seven fraudulent social
17  security cards were seized from the defendant's
18  business.  Two of the cards belong to current
19  employees and five belong to past employees there.
20          Some of the evidence is also complete -- also
21  included a few completed job applications where the
22  employee answered yes to the question "Are you
23  prevented from lawfully becoming employed in this
24  country because of your visa immigration status?"
25  Employees answered yes to that question.  And those

1   applications were seized from Pepe's Cabinets.

2       Fraud permeates, as the government indicates,

3   permeate all of his activities.  For example,

4   defendant was required to submit a quarterly report to

5   EDD identifying the names and social security numbers

6   of all his employees.  Although Pepe's Cabinets has

7   been conducting business since November 1998, the

8   first quarterly report was not submitted to EDD until

9   2001.

10      ICE obtained copies of the EDD reports

11   submitted by Pepe's Cabinets for 2001 to the second

12   quarter of 2007.  Defendant failed to report certain

13   employees to EDD.  In addition, all social security

14   numbers submitted for the seven employees reported in

15   year 2006 were fraudulent.  The four additional

16   employees reported in the last two quarters of 2007

17   were fraudulent.  Based upon that fraud, ICE went back

18   all the way to 2001.  Of all the names submitted, all

19   the social security numbers submitted to EDD, there

20   were approximately 40 employees submitted since 2001.

21   Only -- there were only five valid social security

22   numbers.

23      In addition, defendant has submitted false

24   declarations under penalty of perjury to the City of

25   Oakland Business Tax Office.  In those declarations

17

1  defendant falsely represented that he had no more than
2  one employee.  As the Court -- as the government has
3  indicated, the defendant has actually had
4  approximately 40 employees since 2001.

5          In the same declaration under penalty of
6  perjury defendant falsely represented that social
7  security number 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 was assigned to him.  That
8  social security number is fraudulent.

9          In addition, defendant is required by law to
10 have I-9 forms, which are employment eligibility
11 forms, for his employees.  Defendant by his own
12 admission did not have any I-9's. The purpose of the
13 I-9 is determine whether or not someone is illegally
14 employed in the United States.

15         Defendant also perpetrated fraud against the
16 Internal Revenue Service by paying a number of his
17 employees in cash.  He would call some of his
18 employees into his office every two weeks, pay them in
19 cash.  And he also failed to provide his employees
20 with W-2 forms.  The government has spoken to all of
21 defendant's employees.  Although defendant in his
22 statements claims that he had provided three of his
23 current employees with W-2 forms, two of those -- two
24 of the three employees -- two of the three employees
25 stated to ICE agents that they never received a W-2

1   form.   The third employee is not only the manager of
2   Pepe's Cabinets but he resided with the defendant.

3         Defendant has committed fraud against these
4   various government agencies, has lied to federal
5   agents in his interviews, has lied to Pretrial
6   Services as indicated in the Pretrial Services report.
7   Defendant, for example, stated that -- made no mention
8   of he owns a property building in Oakland.   Defendant
9   failed to mention that to Pretrial Services.   In the
10  last page of Pretrial Services' report Pretrial
11  Services has indicated that they question defendant's
12  honesty during the Pretrial Services report.   In
13  addition, defendant told the Pretrial Services officer
14  that he's been working at Pepe's Cabinets for 12
15  years.   Pepe's Cabinets has only been in existence for
16  nine years, since 1998.

17        With respect to the sureties set forth in the
18  Pretrial Services report, three of -- four of them
19  have been arrested.   There have been two convictions.
20  There's no independent check that determines the
21  criminal history of any of the sureties.   In addition,
22  there's indication that two may be U.S. citizens.
23  There's no indication as to whether the other two
24  proposed sureties are U.S. citizens.   None of the --
25  three of the four sureties indicate that they do not

BEHMKE REPORTING & VIDEO SERVICES
(415) 597-5600

1  have funds.  One has indicated that although he has
2  property he really doesn't want to post the property.
3          Defendant's life is surrounded by illegality,
4  by fraud.  And he's been functioning like this for a
5  very long time.  Defendant's rental -- has rented a
6  house, 3933, since -- for a short time, since
7  September 2006.  As indicated on Page 2 of the
8  Pretrial Services report, his -- his -- he moves from
9  place to place.  He doesn't even know the addresses of
10 certain residents which he lived at.  High Street, he
11 said he lived there three or four years; an unknown
12 address on 50th Avenue for one month.  And it goes on
13 and on where defendant moves from place to place.
14          In addition, defendant no longer has a
15 business.  He no longer has Pepe's Cabinets, which is
16 now out of business.  Defendant also may have assets
17 based upon his ownership of this apartment building
18 and also based upon the wife's statement to ICE agents
19 regarding the large amount of money paid to his
20 attorneys in this case.  $45,000 was also seized from
21 his business.  And based upon the Pretrial Services
22 report, defendant has four cars.
23          We would submit to this Court that based upon
24 the factors set forth in 3142, based upon the
25 preponderance of the evidence, the ICE detainer,

1   defendant is an illegal alien, he's surrounded by
2   illegal aliens, his wife is an illegal alien, all of
3   his fraud towards government agencies, his false.
4   statements to federal agents, his false statements to
5   Pretrial Services officers, we would submit to -- and
6   his easy ability to move in and out of the United
7   States, his easy ability to obtain fraudulent
8   identification documents, including a fraudulent birth
9   certificate, fraudulent social security number, we
10  would submit to this Court that all of this
11  establishes preponderance of the evidence.  The
12  defendant is a flight risk we would submit to this
13  Court.

14          We marked Government's Exhibit A, which is
15  copies of the five identification documents seized
16  from defendant November 6, 2007.  (Unintelligible)
17  Government Exhibit B, which is a DMV report indicating
18  the defendant has three failures to appear at traffic
19  court, that he used a fraudulent U.S. birth
20  certificate to obtain a California driver's license.

21          Defense counsel has both of those documents.
22          We would also like to make part of the record
23  the government's letter to Pretrial Services setting
24  forth some of the factors --

25          MR. GRUEL:  I'm going to object to that, your

21

1  Honor.

2          MS. DOUGLAS:  -- (unintelligible) which is

3  verified by investigatory reports and the federal

4  agent who's in the courtroom today.

5          THE COURT:  (Unintelligible) what about the

6  triplex?

7          MR. GRUEL:  Your Honor, my understanding is

8  that Mr. Guzman-Baez does not own that triplex that is

9  referred to in the government's discovery.  And I'm

10  not actually surprised that the government doesn't

11  have it right because I've taken the time to look at

12  their stack of documents and, you know, let's --

13          THE COURT:  (Unintelligible.)

14          MR. GRUEL:  Okay.  But it's important

15  because, your Honor, Counsel has gone on and on and on

16  about, first of all, with respect to these failures to

17  appear, allegedly.  I've taken the time to look at

18  them, and those FTA's have all been cleared.  And

19  Page 5 of their discovery, Page 7 of their discovery,

20  these have all been cleared and are not being -- are

21  not being represented (unintelligible) --

22          THE COURT:  (Unintelligible) a

23  long-successful attorney, one knows that when one's

24  winning --

25          MR. GRUEL:  But -- but --

22

```
 1              THE COURT:  (Unintelligible.)
 2              MR. GRUEL:  He's telling me to stop.
 3              But the triplex, your Honor,
 4    (unintelligible).  He says he doesn't own it and
 5    there's no documentation to show that he owns it.
 6              MS. DOUGLAS:  The case agent informed me that
 7    he seized documents from Pepe's Cabinets indicating
 8    that this defendant owns that property.
 9              THE COURT:  (Unintelligible) cabinet shop
10    employing at least eight, if not more, employees.
11    With any other situation (unintelligible).  However,
12    having said that, (unintelligible), they have a
13    residence, he has a 13-year history (unintelligible)
14    area.  (Unintelligible) Mr. Gruel (unintelligible).
15              MR. GUAJARDO:  Guajardo.
16              THE COURT:  Guajardo.  Guajardo is the
17    immigration attorney he has also retained to assist
18    him.  Mr. Guajardo's apparently assisting
19    Mr. Guzman-Baez's wife in obtaining at least some stay
20    of the immigration proceedings.  Has been successful
21    there.  Has indicated to the court that he feels that
22    given all the circumstances that there's most likely
23    some likelihood (unintelligible) likelihood that
24    Mr. Guzman-Baez will also be allowed to remain until
25    such time as both (unintelligible).
```

23

1           Having said that, it's also my understanding
2  that Mr. Gruel will inform counsel to the government
3  immediately and also the court if in fact there has
4  been a -- if the immigration court refuses to bond the
5  defendant out so that the court can then
6  (unintelligible) allow government to place a detainer
7  on Mr. -- on Mr. Guzman-Baez.

8           Given all of these, the fact -- also the fact
9  that his wife, Ms. Ramirez, is going to act as a
10 custodian (unintelligible) and that Mr. Carlos
11 Fuentes, a friend, is willing to act as a surety and
12 post 25,000 -- $50,000 bond, government -- this court
13 does find that there's sufficient facts brought before
14 it to assure the presence of this defendant for any
15 further proceeding.

16          I understand that counsel for the government
17 disagrees with the court.  (Unintelligible) Judge
18 Jensen.  But I will bond defendant out this time.

19          MS. DOUGLAS:  Your Honor, the government is
20 seeking a stay.  We intend to appeal.

21          THE COURT:  Well, I would like to first
22 finish the bonding process (unintelligible).

23          Do we have the surety and
24 the (unintelligible)?

25          MR. GRUEL:  Mr. Fuentes is here.

```
 1   Mr. Guzman-Baez's common-law wife is present
 2   (unintelligible).
 3              THE INTERPRETER:  Your Honor, would you wish
 4   the interpreter to interpret for the defendant as well
 5   as for one of the sureties?
 6              THE COURT:  Any objection?
 7              MR. GRUEL:  No.
 8              THE COURT:  All right.  I'd like all three of
 9   you to listen carefully.
10              Mr. Fuentes, you're going to act as a surety.
11   That means you're going to put up your house
12   (unintelligible) referred to in the Pretrial Services
13   report.
14              Can I have your address, please.
15              MR. FUENTES:  Yes.  My address, where I live,
16   is 2108 99 Avenue.
17              THE COURT:  2108 99 Avenue?
18              MR. FUENTES:  99.  Oakland, 94603.
19              THE COURT:  And telephone number.
20              MR. FUENTES:  It's 415.
21              THE COURT:  415.
22              MR. FUENTES:  569-6305.
23              THE COURT:  6305?
24              MR. FUENTES:  Yes.
25              THE COURT:  And now Mr. Gruel --
```

25

```
 1              Thank you, (unintelligible).

 2              Mr. Gruel, is Mr. Guzman-Baez and Ms. Ramirez

 3    (unintelligible)?

 4              MR. GRUEL:  I'll have to ask.

 5              MS. RAMIREZ (through the interpreter):  Yes.

 6    And it's 510.

 7              THE COURT:  Mm-hmm.

 8              MS. RAMIREZ (through the interpreter):  430.

 9              THE COURT:  430.

10              MS. RAMIREZ (through the interpreter):  90.

11              THE COURT:  90.

12              MS. RAMIREZ (through the interpreter):  46.

13              THE COURT:  46.

14              All right.  And both Mr. Fuentes -- and both

15    Mr. Guzman-Baez and Ms. Ramirez live at 3933 Milbe

16    Avenue in Oakland; is that correct?

17              THE INTERPRETER:  Can you repeat that, your

18    Honor?

19              THE COURT:  3933 Milbe.  It's M-i-l-b-e.

20    Oakland, California.  Is that correct?

21              MS. RAMIREZ (through the interpreter):

22    That's where we live.

23              THE COURT:  All right.  Now --

24              MS. RAMIREZ (through the interpreter):

25    That's where we used to live.
```

26

```
 1              MS. DOUGLAS:  Right.
 2              THE COURT:  All right.  Where do you --
 3   because that's what it shows on the Pretrial Services
 4   report.
 5              MR. GRUEL:  If you're looking at -- first of
 6   all, they've got it spelled wrong.  I think it's
 7   Middal (unintelligible).  M-i-d-d-a-l.
 8   (Unintelligible.)
 9              MS. RAMIREZ (through the interpreter):  Yes,
10   Middal.
11              Current address is 2272 86th Avenue.
12              THE COURT:  2272 86th Avenue.
13              MS. RAMIREZ (through the interpreter):
14   Oakland, California, 94605.
15              MS. DOUGLAS:  In his application, he had only
16   lived there for a couple weeks.  December the 13th,
17   2007.
18              THE COURT:  Now --
19              MS. RAMIREZ (through the interpreter):  Yes.
20   Because I couldn't pay rent anymore.
21              THE COURT:  Okay.
22              MS. RAMIREZ (through the interpreter):  We're
23   living with friends now.
24              THE COURT:  Do these friends have a telephone
25   number?
```

BEHMKE REPORTING & VIDEO SERVICES
(415) 597-5600

```
 1            MS. RAMIREZ (through the interpreter):  It's
 2  that -- it's that phone number.
 3            THE COURT:  Is that a hard line?
 4            MS. RAMIREZ (through the interpreter):  Yes.
 5  It's the house phone.
 6            THE COURT:  All right.
 7            I'd like you to listen carefully
 8  (unintelligible) --
 9            MR. FUENTES:  Okay.
10            THE COURT:  -- $25,000 bond.  Mr. Gruel will
11  assist you with the paperwork, subject to
12  Judge Jensen's (unintelligible).  Once that's posted,
13  if the defendant fails to make his appearances here
14  government can go after you for the full $50,000 as it
15  can against Ms. Ramirez (unintelligible) either
16  against three of you together or against any one of
17  the three of you.  Including foreclosing on $25,000
18  (unintelligible) other parties are not available to
19  fill that $50,000 bond.
20            Do you understand?
21            MR. FUENTES:  I understand that.
22            THE COURT:  Ms. Ramirez, same thing goes for
23  you.  Mr. Guzman (unintelligible) government
24  (unintelligible) the whole part or a portion of it.
25            Do you understand that?
```

28

```
 1            MS. RAMIREZ (through the interpreter):  Yeah.
 2            THE COURT:  And, Mr. Guzman, the same goes to
 3  you.
 4            Now then, here are the conditions of bond.
 5  Defendant shall appear at all proceedings ordered by
 6  the court and shall surrender (unintelligible).  Shall
 7  not commit any federal, state, or local crime.  Shall
 8  not harass, threaten, intimidate, injure, tamper with
 9  or retaliate against any witness, victim, informant,
10  juror or officer of the court or disrupt any criminal
11  investigation.  Shall not travel outside
12  (unintelligible) California.  Mr. Gruel
13  (unintelligible) California.  You shall report
14  (unintelligible) release and thereafter
15  (unintelligible) Pretrial Services in --
16            UNIDENTIFIED SPEAKER:  Oakland, California,
17  your Honor.
18            THE COURT:  In Oakland.
19            Shall surrender all passports and visas to
20  (unintelligible) to the court by close of business
21  today.  You indicate there aren't any but
22  (unintelligible) are any travel documents
23  (unintelligible) immigration (unintelligible) close of
24  business today.
25            Would there be any reason for you to have to
```

29

```
 1   have any of those documents as originals?
 2            UNIDENTIFIED SPEAKER:  No, your Honor.
 3            THE COURT:  All right.
 4            Defendant shall remain in the custody of
 5   custodian Maria Ramirez at 2272 86th Avenue, Oakland,
 6   California.
 7            And Ms. Ramirez, that means that you have to
 8   make sure that Mr. Guzman-Baez follows all the terms
 9   and conditions of his bond.  If he fails to abide by
10   them, you have an obligation to call Pretrial Services
11   (unintelligible).
12            Do you understand that?  Are you
13   (unintelligible)?
14            MS. RAMIREZ (through the interpreter):  Yes.
15            THE COURT:  All right.
16            Defendant shall not use alcohol to excess and
17   shall not use or possess any narcotic or other
18   controlled substance without a legal prescription.
19   Defendant shall have no contact with any co-defendant
20   other than in presence of counsel.  Defendant shall
21   not change residents without prior approval from
22   Pretrial Services.  The defendant shall be subject to
23   electronic monitoring.  Defendant will leave home for
24   purposes of court.
25            I'm going to leave that as -- for right now.
```

30

 1   If there's a change, that is, if he gets a work
 2   permit, if Judge Jensen doesn't remand him and if he
 3   goes before the immigration court, gets a work permit,
 4   then you'll need to discuss that with Pretrial
 5   Services.

 6          UNIDENTIFIED SPEAKER:  Your Honor, I just
 7   want to inform the Court with the current status of
 8   the electronic monitoring system I think we're near
 9   our quota or maximum of cases that we can handle at
10   this time.  I'm not sure the status but we may be near
11   the point where we won't be -- will not be able to
12   accept any more electronic monitoring cases.

13          THE COURT:  Well, then we'll have to --
14   then -- it's going to take a while to get paperwork
15   (unintelligible) decide whether or not
16   (unintelligible).  There may be a change in that
17   (unintelligible).

18          UNIDENTIFIED SPEAKER:  Thank you, your Honor.
19          THE COURT:  As I've indicated, surety shall
20   be Mr. Fuentes (unintelligible) $25,000.  And then
21   defendant shall inform Pretrial Services regarding
22   immigration status (unintelligible) January 24th,
23   2008.
24          (Unintelligible)?
25          UNIDENTIFIED SPEAKER:  Yes.

31

```
 1              MS. DOUGLAS:  Your Honor, so the record is
 2    clear, the total amount of bond is $50,000.  And you
 3    indicated that (unintelligible) sureties.
 4              THE COURT:  All right.  Bond is for $50,000,
 5    secured by $25,000 (unintelligible).
 6              MS. DOUGLAS:  And that's unencumbered deed of
 7    trust?
 8              THE COURT:  Mr. Gruel (unintelligible).
 9              The surety is Mr. Fuentes, custodian will be
10    Ms. Ramirez.  Ms. Ramirez is also a surety in the
11    matter.
12              Defendant is to remain at the residence
13    2272 86th Avenue, Oakland, under electronic
14    monitoring.  He will not be released (unintelligible)
15    case regardless of his immigration status until
16    (unintelligible) electronic monitoring and that he's
17    to make all of his court appearances.  I will order
18    him to report to Judge Jenkins on January 25th, 2008.
19              MS. DOUGLAS:  "Jensen."
20              THE COURT:  (Unintelligible)?
21              MR. GRUEL:  Judge Jensen.
22              THE COURT:  Judge Jensen.
23              MR. GRUEL:  It's at 9:00 a.m.
24    (unintelligible).
25              THE COURT:  At 9:00 a.m.
```

BEHMKE REPORTING & VIDEO SERVICES
(415) 597-5600

1          MR. GRUEL:  (Unintelligible) your Honor, your

2    order also included that he can leave home for any

3    immigration court appearances?

4          THE COURT:  For purposes of court, both

5    (unintelligible).

6          Now, Mr. Guzman-Baez, I also need to inform

7    you (unintelligible) misdemeanor while

8    (unintelligible) you will also be subject to

9    prosecution under federal statute for a misdemeanor

10   violation with a maximum penalty of up to one year.

11   If you commit a felony (unintelligible) you will also

12   be subject to a separate federal felony charge with a

13   10-year maximum (unintelligible).

14         Do you understand that?

15         MR. GUZMAN (through the interpreter):  Yes.

16         THE COURT:  Mr. Guzman, do you agree to abide

17   to all the conditions (unintelligible)?

18         MR. GUZMAN (through the interpreter):  Yes.

19         THE COURT:  And Ms. Ramirez, you agree to be

20   both a surety and custodian of Mr. Guzman-Baez, as

21   I've indicated before?

22         MS. RAMIREZ (through the interpreter):  Yes.

23         THE COURT:  And given everything I've said,

24   Mr. Fuentes, you're willing to act as a surety in the

25   matter and post $25,000?

1          MR. FUENTES:  Yes.

2          THE COURT:  All right.

3          MS. DOUGLAS:  The government would like to

4    say for the record that we would oppose an illegal

5    alien functioning as the custodian and surety

6    (unintelligible).

7          THE COURT:  I believe Ms. Ramirez currently

8    now has at least temporary status in the

9    United States.

10         Is that correct?

11         MR. GUAJARDO:  That's -- she has on file her

12   application for cancellation of removal and an

13   application for work authorization as well.

14         THE COURT:  She's been released by

15   immigration.

16         MR. GUAJARDO:  And she's been released from

17   custody on her own recognizance by the agency.

18         MS. DOUGLAS:  And there's no temporary

19   status.  Their applications are pending; is that

20   correct?

21         MR. GUAJARDO:  Before the court.

22         MS. DOUGLAS:  Yes.

23         And your Honor, for the record, indicate for

24   the record that Government Exhibits A, B is part of

25   the record and also the government's (unintelligible)

34

```
 1   December 27, 2007 to Pretrial Services' office.
 2               THE COURT:  Mr. Gruel, any objection?
 3               MR. GRUEL:  It's -- no objection.
 4               THE COURT:  All right.  (Unintelligible.)
 5               (Unintelligible discussion.)
 6               THE COURT:  I'm not going to expect
 7   Judge Jensen to order a stay (unintelligible).
 8               MR. GRUEL:  Is there a time limit on that
 9   stay, your Honor?
10               THE COURT:  Well, no later than the 25th.
11               MR. GRUEL:  Okay.
12               THE COURT:  Yeah.  And Mr. Hahn (phonetic)
13   will hang onto the original, to the documents, until
14   such time as Judge Jensen.
15               All right.  Thank you.  Anything further?
16               MR. GRUEL:  No, your Honor.
17               THE COURT:  All right.
18               MR. GRUEL:  Thank you, your Honor.
19               (End of transcription.)
20
21
22
23
24
25
```

1  STATE OF CALIFORNIA      )

2  COUNTY OF SAN MATEO      )

3          I hereby certify that the transcript is a true

4  record of the audiotaped recording as reported by me, a

5  duly certified shorthand reporter and a disinterested

6  person, and was thereafter transcribed into typewriting

7  by computer.

8          I further certify that I am not interested in

9  the outcome of the said action, nor connected with, nor

10  related to any of the parties in said action, nor to

11  their respective counsel.

12          IN WITNESS WHEREOF, I have hereunto set my hand

13  this 11th day of January, 2008.

14

15

16          _____

17          JILL BAIONI, CSR # 8812

18          STATE OF CALIFORNIA

19

20

21

22

23

24

25

36