1   BARRY J. PORTMAN
    Federal Public Defender
2   SHAWN HALBERT
    Assistant Federal Public Defender
3   555 - 12th Street
    Suite 650
4   Oakland, CA 94607-3627
    Telephone:  (510) 637-3500
5
    Counsel for GUZMAN-BAEZ
6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,            )   No. CR-07-0794 DLJ, 07-0797 DLJ
                                         )
12              Plaintiff,               )   DEFENDANT'S REPLY IN SUPPORT OF
                                         )   MOTION TO SUPPRESS EVIDENCE
13  vs.                                  )
                                         )   Date: April 17, 2008
14  JOSE DE JESUS GUZMAN-BAEZ,           )   Time: 10:00 a..m.
                                         )   Court: Honorable D. Lowell Jensen
15              Defendant.               )
    _____)
16

17         Mr. Jose de Jesus Guzman-Baez asks this Court to suppress the evidence seized from his

18  business and all other fruits of the search, or, alternatively, to hold granting a *Franks* hearing.[1]

19  _____

20         [1]With respect to the *Franks* issue, there is a possible additional material misstatement
    regarding the informant, which the defense cannot verify until the government produces
21  unredacted discovery.  The warrant affidavit stated that the informant had entered the country
    illegally.  *See* Affidavit ¶ 15 (the informant "last entered the United States by crossing the border
22  between the United States and Mexico without inspection by an immigration officer.")  This is
    what the informant, Carlos Villasenor, initially told the affiant, Agent Barge, when he first was
23  arrested.  *See* Report of Investigation (December 5, 2006), attached as Exhibit H (Exhibits A
    through G were attached to the defense's opening motion).  However, if Report of Investigation
24  (December 7, 2006), attached as Exhibit I, also refers to Mr. Villasenor, then Agent Barge later
    learned that the informant actually had a valid border crossing card that granted a limited right to
25  enter the United States.  As the informant's legal status in the United States is obviously critical
    to the warrant, the defense asks the government to produce unredacted versions of these
26

1

**ARGUMENT**

2

**A.    THE COURT SHOULD GRANT MR. GUZMAN-BAEZ'S MOTION TO SUPPRESS**

3

4

The Affidavit did not establish probable cause to search "Pepe's Cabinets."  The

5

government is correct that Mr. Guzman-Baez's primary argument is that the affidavit did not

6

establish probable cause to believe that he knew that his employees were not legally in the United

7

States and thus not legally authorized to work.  The government argues that the allegations in the

8

affidavit, "including reasonable inferences," established probable cause to believe that Mr.

9

Guzman-Baez knew that his employees were illegal aliens.  Government's Omnibus Opposition

10

to Defendant's Motions ["Gov't Opp."] at 3.  Mr. Guzman-Baez disagrees.  Further, it is

11

improper for the government to ask the Court to make such inferences where the government is

12

fully aware that it was *unable* to obtain direct evidence of what it is asking the Court to infer.

13

The government's argument is based on statements in the affidavit that (1) all Social

14

Security numbers submitted to the California Employment Development Department ["EDD"]

15

for Pepe's Cabinets employees were false; (2) the *informant* knew that other Pepe's Cabinets

16

employees had entered the United States illegally; (3) the illegal-alien employee who served as a

17

government informant was paid in cash and did not complete employment paperwork; (4) the

18

*informant* had asked Mr. Guzman-Baez to hire an undocumented worker (which, it must be

19

noted, Mr. Guzman-Baez did *not* agree to do); and (5) that Mr. Guzman-Baez learned that Ms.

20

Gamino-Perez was illegal when he was stopped with her by the Coast Guard on July 27, 2007.

21

Gov't Opp. at 3-4.  The allegations in the warrant do not establish, or even support a reasonable

22

inference, that Mr. Guzman-Baez knew the employees were not legally authorized to work in the

23

United States.  The defense will address these arguments in order.

24

The government argues that it did not have to present direct evidence in the warrant that

25

Mr. Guzman-Baez knew his employees were illegal because "[t]he only reasonable inference" to

26

interviews forthwith so that the parties can address this issue at the hearing.

1  be drawn from Pepe's Cabinets providing false social security numbers to the EDD is that Mr.

2  Guzman-Baez knew that the employees were illegal aliens.  Gov't Opp. at 3.  This is a gross

3  overstatement.  The most obvious inference to be drawn is that the employees provided the

4  preparer of the EDD forms with false social security numbers in order to obtain and/or keep their

5  jobs.  The defense strongly disagrees that as a legal matter, a court can infer that an employer –

6  whether it is a small business owner or Walmart –  knows that his workers are illegal any time

7  workers supply a tax preparer with false social security numbers.

8        Most of the incriminating allegations in the affidavit were obtained from the informant in

9  this case, an illegal alien, employed at Pepe's Cabinets, to whom the government provided

10  benefits in exchange for his assistance.  Affidavit ¶¶ 16-17.  As Mr. Guzman-Baez pointed out in

11  the memorandum in support of his motion, *the affidavit does not say that the informant ever told*

12  *Mr. Guzman-Baez that he was illegally in the United States or that Mr. Guzman-Baez was*

13  *present when other employees discussed their illegal status*.  Given that the informant had been

14  cooperating with the government for nearly 11 months by the time the affidavit was prepared, the

15  informant would have provided these facts to the affiant if they were true.  But the affidavit

16  includes no facts establishing that Mr. Guzman-Baez knew that either the informant or the other

17  Pepe's Cabinets employees were not legally in the United States.  Lacking such facts, the

18  government resorts to "inferences."

19        The government's lengthy argument that it was appropriate for the magistrate court

20  issuing the warrant to infer that Mr. Guzman-Baez must have heard employees talking about

21  their illegal status because of the "environment" at Pepe's Cabinets is completely improper.  The

22  government knows full well that after almost a year of cooperation, its own informant never had

23  a conversation with Mr. Guzman-Baez about his (the informant's) legal status, and never was

24  able to attest that Mr. Guzman-Baez had been present during the conversations in which

25  employees allegedly confessed their illegal status to the informant.  These are exculpatory facts

26  that should have been made clear in the warrant.  Given those irrefutable facts, the government's

1  invitation that the Court infer that Mr. Guzman-Baez must have heard these conversations is not

2  only legally unsound, but it raises a larger issue, more properly addressed in the *Franks* portion

3  of this motion, that the warrant invited the reviewing magistrate to make an inference that Mr.

4  Guzman-Baez had been present during the conversations when the government had direct

5  evidence to the contrary, through its informant.

6          As a general matter, the government's characterization of the informant's statements

7  about conversations among the employees at Pepe's Cabinets in its opposition differs

8  significantly from the description of these conversations in the search warrant affidavit.  The

9  government says in its opposition brief to this Court that "the employees . . . openly discussed

10  their status as illegal aliens and how they entered the United States without inspection by

11  immigration officials."  Gov't Opp. at 4; *see also* Gov't Opp. at 6 ("It is clear from the affidavit

12  that the environment at Pepe's Cabinets . . . facilitated open discussions about the status of

13  employees as illegal aliens.").  The affidavit, by contrast, states that "[i]t is common for Pepe's

14  *employees to describe to each other* how they arrived in the United States," and the informant

15  knows that other Pepe Cabinet's employees are not legally in the United States "[b]ased on

16  conversations *with his co-workers*."  Affidavit ¶ 17.b (emphasis added).[2]

17          Moreover, the claim that employees openly discussed their illegal status is belied by the

18  government's interviews with the informant.  Although the informant had been working at

19  Pepe's Cabinets for approximately eight months when he first was interviewed by ICE agents, he

20  told the agents then that he was "not sure if anyone else employed at Pepe's is an illegal alien."

21  Report of Investigation (December 5, 2006 interview), attached as Exhibit H.  In other words,

22  employees did not discuss their legal status.  It was only after he became an informant, and at the

23  direction of the Department of Homeland Security asked the other employees if they were in the

24  _____

25          [2]The Affidavit in Support of Search Warrant was submitted as Attachment A to Mr.
   Guzman-Baez's motion to suppress and as Exhibit A to the government's opposition.  It will be
26  cited here as "Affidavit."

DEFENSE REPLY MOTION TO SUPPRESS
No. CR-07-0794 DLJ, 07-0797 DLJ                4

1   country illegally, that he allegedly gained this additional information.  It took six months for him

2   to learn that all Pepe's Cabinets employees were illegal aliens because "it came up in

3   conversation or he asked them directly, how did you come here?"  Report of Investigation (June

4   12, 2007 interview), attached as Exhibit J.  These reports indicate that these conversations did

5   not occur naturally but instead were prompted by the informant.  This fact, coupled with the lack

6   of any indication in the affidavit that Mr. Guzman-Baez participated in or even was present

7   during these conversations, not only undermines the government's argument that Mr. Guzman-

8   Baez must have known, from "the environment at Pepe's Cabinets," that the employees were not

9   legally authorized to work in the United States, but also shows that the government's argument –

10  and its suggestion to the magistrate court from which it sought a warrant –  is contrary to facts in

11  its possession.[3]

12          The fact that the informant did not fill out papers when he started working at the cabinet

13  shop, including an I-9 form, does not justify the conclusion that Mr. Guzman-Baez knew that the

14  informant was not legally authorized to work.  Again, it is an elephant in the room that the

15  warrant affidavit does not state that the informant ever discussed his legal status with Mr.

16  Guzman-Baez, a remarkable fact given that the informant was cooperating with the government

17  for almost a year and could have broached this topic with Mr. Guzman-Baez at any time.  Small

18  employers across the country pay employees and countless housecleaners and nannies and the

19  like in cash "under the table," as the informant was paid, and while that may violate other rules

20

21          [3]Mr. Guzman-Baez also notes that the informant's claims in the affidavit that employees
    Maria Ramirez and Michael Velascopantoja told him how they entered the United States,
22  Affidavit ¶ 17.b., do not appear in any of Agent Barge's reports of interviews with the informant
    that have been provided in discovery, which means either that the agent did not make any
23  notation of critical facts told to him by the informant or that the government has not produced
    relevant discovery.  Maria Ramirez's story of crossing the border through Mexicali by jumping a
24  fence and crossing a sewer, as recounted by the informant, Affidavit ¶ 17.b., is at odds with her
    post-arrest statement that she entered the United States near San Ysidro, California
25  (approximately 135 miles from Mexicali), "by walking through the hills."  *See* Report of
    Investigation (December 18, 2007, interview of Maria Ramirez), attached as Exhibit K.
26

1   and laws about paying taxes, the warrant in this case specifically identified only three enumerated

2   crimes for which evidence was sought; all of the crimes identified in the warrant had as an

3   element the knowledge of employees' illegal work status.

4          The final two facts on which the government relies for probable cause in the warrant – the

5   conversation that Mr. Guzman-Baez allegedly had about hiring the informant's friend, and the

6   stop of Mr. Guzman-Baez and Ms. Gamino-Perez by the Coast Guard on July 27, 2007 – provide

7   zero weight for the probable cause showing.  Both of these facts also involve serious *Franks*

8   issues, discussed below.  With respect to the fact that Mr. Guzman-Baez was asked by the

9   informant to hire a person without papers, Mr. Guzman-Baez did not do so and, most critically,

10  did not agree to do so.  If anything, this fact is exculpatory.  With respect to the fact that Mr.

11  Guzman-Baez and Ms. Gamino-Perez were pulled over by the Coast Guard, it cannot be

12  emphasized enough that the warrant does not contain facts showing that Mr. Guzman-Baez

13  learned about Ms. Gamino-Perez's illegal status during that stop.  Thus, Agent Barge's

14  conclusion that Mr. Guzman-Baez continued to employ her with knowledge of her status carries

15  no weight.

16         The government acknowledges that the search warrant should not have issued unless the

17  affidavit established probable cause to believe that Mr. Guzman-Baez knew that his employees

18  were not legally authorized to work in the United States.  Although "a probable cause

19  determination may be based *in part* on reasonable inferences," *United States v. Gourde*, 440 F.3d

20  1065, 1071 (9th Cir. 2006) (emphasis added), it also must include facts on which the inferences

21  may be based, and the inferences drawn from those facts must be reasonable.  *See, e.g.*, *United*

22  *States v. Kelley*, 482 F.3d 1047, 1052-53 (9th Cir. 2007) (reciting facts that support one inference

23  needed to establish probable cause); *Gourde*, 440 F.3d at 1071 (discussing the "triad of solid

24  facts" that support the one inference needed to establish probable cause).  As discussed above

25  and in the memorandum in support of Mr. Guzman-Baez's motion, the affidavit in support of the

26  search warrant in this case lacks the facts necessary to support a reasonable inference that Mr.

1    Guzman-Baez had knowledge of the employees' illegal status.

2        "[C]ourts must continue to conscientiously review the sufficiency of affidavits on which

3    warrants are issued." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).  The affidavit here, based

4    largely on the uncorroborated statements of an untested informant who is receiving a substantial

5    benefit from the government, does not establish probable cause to search Pepe's Cabinets.  For

6    the reasons discussed above and in the memorandum in support of his motion, all fruits of the

7    search must be suppressed.[4]

8    **B.    THE COURT SHOULD HOLD A FRANKS HEARING IF IT DOES NOT GRANT
         THE MOTION TO SUPPRESS**

9
         The government asserts that Mr. Guzman-Baez has "completely failed to meet his burden
10
     of proof" with respect to his argument pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), but
11
     apart from citing general case law, does not argue or present a single fact in defense of its
12
     position.  Gov't Opp. at 9.  Mr. Guzman-Baez has made specific allegations that the affidavit
13
     both included false statements and omitted significant information.  He has alleged that the
14
     affiant deliberately, or at least recklessly, misrepresented and omitted the truth.  He has offered
15
     factual support for his allegations that challenge the veracity of the affiant, and he has shown that
16
     the challenged misstatements and omissions were necessary to the showing of probable cause.
17
     The Court should grant a *Franks* hearing.
18
         In his motion, Mr. Guzman-Baez identified four material misstatements in or omissions
19
     from the search warrant affidavit:  (1) the affidavit omitted the fact that the affiant knew that the
20
     informant had made a false prior statement about his employment at Pepe's Cabinets; (2) the
21
     affidavit omitted the fact that the affiant knew that someone other than Mr. Guzman-Baez had
22

23
     _____

24       [4]To the extent that the government's opposition can be read as arguing that the Court
     need not suppress the evidence, even if the warrant was not supported by probable cause, because
25   the search was conducted in good faith, Gov't Opp. at 5, 8, the government has not carried its
     "burden of proving that its agents' reliance on the warrant was objectively reasonable." *United*
26   *States v. Michaelian*, 803 F.2d 1042, 1048 (9th Cir. 1986).

1  prepared the EDD reports that the affidavit relied on; (3) the affidavit materially misrepresented a

2  conversation between Mr. Guzman-Baez and the informant about Mr. Guzman-Baez's

3  willingness to hire an undocumented employee; and (4) the affidavit materially misrepresented

4  the circumstances of the July 27, 2007, Coast Guard stop.

5       The government does not dispute the factual premise for the first three omissions and

6  misstatements Mr. Guzman-Baez identified. *See* Gov't Opp. at 5 ("All six [EDD] reports were

7  prepared and signed on behalf of 'Jose De Jesus Guzman, Pepe's Cabinets' by a professional

8  preparer."), 6 ("Guzman said that he wants to see what happens with the old man,"[5] and "a rental

9  apartment application states that the cooperating witness has been employed at Pepe's Cabinets

10  for three years").

11      These misstatements and omissions reflect on the truthfulness of the affiant, Agent Barge.

12  Agent Barge knew that the informant had made a false statement on a rental application about his

13  employment at Pepe's Cabinets, *see* Exhibit C to Motion (stating that Agent Barge received copy

14  of informant's rental application), yet he did not provide the magistrate with this (or any)

15  information casting doubt on the informant's credibility. Agent Barge knew that the EDD forms

16  for Pepe's Cabinets were signed by a paid preparer, *see* Affidavit ¶ 13 (stating that "[t]his affiant

17  has obtained a copy of EDD records"), yet he did not include this fact in the affidavit.

18      When Agent Barge directed the informant to tape a conversation with Mr. Guzman-Baez

19  about possibly hiring an illegal alien, Agent Barge knew that Mr. Guzman said only that "he

20  wants to see what happens with the old man," Exhibit D to Motion, not that "he wanted to first

21  determine the work status of another employee," as Agent Barge claimed in the affidavit.

22  Affidavit ¶ 17.d. There are two aspects to the affiant's false characterization of Mr. Guzman-

23  Baez's response to the informant: first, the affiant states that Mr. Guzman-Baez said that he

24  _____

25      [5]The government argues that the defense omitted the portion of the ICE report that is
consistent with the affidavit. Gov. Opp. at 6. This is incorrect. The defense attached the ICE
26  report to its filing. There is no portion of the ICE report that is consistent with the affidavit.

1    wants to do something "first," implying that he will hire the person illegally afterwards; and

2    second, the affiant falsely states that Guzman-Baez referred to the "work status" of another

3    employee, which is the general subject of the criminal investigation.  These misstatements and

4    omissions were tailored, deliberately or at least recklessly, to bolster the showing of probable

5    cause in the affidavit.

6         Moreover, the government's opposition relies heavily on the challenged portions of the

7    affidavit to argued that it established probable cause.  Gov't Opp. at 3-4.  The bulk of the

8    incriminating information in the affidavit comes from the informant and is not corroborated by

9    any law enforcement investigation.  Affidavit ¶ 17; *see* Gov't Opp. at 3-5 (relying on information

10   provided by informant in probable cause discussion).  Under these circumstances, the affiant's

11   failure to inform the magistrate that the informant had lied about his employment certainly

12   qualifies as a material omission.  *See, e.g.,Gates*, 462 U.S. at 230 (noting that informant's

13   veracity and reliability are "highly relevant in determining the value of his report"); *United States*

14   *v. Martinez-Garcia*, 397 F.3d 1205, 1216 (9th Cir. 2005) (noting that probable-cause evaluation

15   considers the credibility of the informant).  Given that the affidavit also relies substantially on the

16   EDD forms, Affidavit ¶¶ 13, 14, 17.b, c., it certainly is significant that the person who signed the

17   forms, attesting that "the information herein is correct to the best of my knowledge and belief,"

18   Exhibit B to Motion, was not Mr. Guzman-Baez, as the affidavit states, *see* Affidavit ¶ 14

19   (stating repeatedly that "Guzman reported" employees to EDD and "the social security numbers

20   that Guzman submitted to EDD . . . are fraudulent"), but instead a paid preparer.  In fact, the

21   government had no information whatsoever that Mr. Guzman-Baez was even the person who

22   provided this information to the preparer.

23        The government's opposition raises a dispute of fact about the fourth misstatement Mr.

24   Guzman-Baez identified in the affidavit.  Mr. Guzman-Baez submitted with his motion a

25   declaration stating, in relevant part, that during the July 27, 2007, Coast Guard stop he did not

26   see or hear anything about Ms. Gamino-Perez's legal work status in the United States.  Exhibit E

1    to Motion, ¶ 5.

2    　　　Out of thin air, the government has now produced a new, startlingly incriminating

3    statement by Mr. Guzman-Baez, in which he supposedly was asked the Perry Mason question

4    about Ms. Gamino-Perez: "Then you know she's an illegal alien?", to which Mr. Guzman-Baez

5    supposedly vigorously nodded in assent.  As an exhibit to its opposition, the government

6    submitted a declaration from Agent Barge recounting a March 27, 2008, interview with Coast

7    Guard officer Bill Bermudez about the July 27, 2007 stop of Mr. Guzman-Baez.  Exhibit B to

8    Gov't Opp. at 2-3.  According to Agent Barge, on March 27, 2008, Officer Bermudez told him

9    that during the stop the previous year before, Mr. Guzman-Baez supposedly spoke to Ms.

10    Gamino-Perez in Spanish, saw Ms. Gamino-Perez hand Officer Bermudez her Mexican

11    identification card, told Officer Bermudez that Ms. Gamino-Perez did not have any other

12    identification and nodded when Officer Bermudez asked him (presumably in English) whether he

13    knew that Ms. Gamino-Perez was an illegal alien.  Exhibit B to Gov't Opp. at 2-3.

14    　　　As an initial matter, Mr. Guzman-Baez notes that this encounter between Officer

15    Bermudez and Mr. Guzman-Baez is not mentioned in any document that has been provided to

16    Mr. Guzman-Baez in discovery, even though it includes a statement by Mr. Guzman-Baez.  *See*

17    Fed. R. Crim. P. 16(a)(1) (requiring government to disclose defendant's statements).  In fact, the

18    only Coast Guard report the government has disclosed indicates that it was Sergeant Marrow, and

19    not Officer Bermudez, who asked Ms. Gamino-Perez for her identification.  *See* Incident

20    Complaint Report, attached as Exhibit L ("I requested to see the passenger's identification as

21    well.  I was given a Mexico Matricular Card with the name Maria Guadalupe Gamino-Perez.").

22    Notably, Sergeant Marrow's report, which presumably was prepared on or close to the day of the

23    incident, says nothing about Mr. Guzman-Baez being asked about or acknowledging Ms.

24    Gamino-Perez's illegal status.  Exhibit L.  This allegation appears only in Agent Barge's account

25    of his recent interview with Officer Bermudez , which occurred eight months after the incident.

26    Exhibit B to Gov't Opp. at 2.  Under these circumstances, it is Officer Bermudez's hearsay

1   statement, not Mr. Guzman-Baez's, that is "unbelievable."  Gov't Opp. at 7.

2       With his declaration, Mr. Guzman-Baez has made a specific allegation, supported by

3   evidence, that the portion of the affidavit that recounts the Coast Guard stop is false or

4   misleading.  At most, Agent Barge's declaration creates a dispute of fact about whether the

5   affidavit falsely or misleadingly stated that Mr. Guzman-Baez had "full knowledge that Ms.

6   Gamino[-Perez] is an illegal alien."  Affidavit ¶ 20.  The Court should hold a *Franks* hearing to

7   resolve the dispute of fact on this point.  Although it should be covered by Mr. Guzman-Baez's

8   declaration in support of the opening motion, a signed copy of which is being filed herewith as

9   part of Exhibit M, the defense is also submitting an additional declaration from Mr. Guzman

10  directly contradicting the new government discovery, also attached as part of Exhibit M.  At the

11  *Franks* hearing, Mr. Guzman-Baez will also gladly address Agent Barge's claim that Mr.

12  Guzman-Baez admitted in custodial interrogation on November 6, 2007 that he (Mr. Guzman-

13  Baez) found out that Ms. Gamino was an illegal alien during that encounter.

14      Mr. Guzman-Baez has identified a number of misrepresentations in and omissions from

15  the affidavit submitted in support of the search warrant.  He supported his allegations with

16  evidence, most of which the government does not dispute.  All the allegations go to the

17  credibility of the affiant, and they all are material to the affidavit's showing of probable cause.

18  For the reasons discussed above and in the memorandum in support of the motion, if the Court

19  does not suppress all fruits of the search of Pepe's Cabinets, it should hold a *Franks* hearing.

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CONCLUSION**

For the reasons stated above, the affidavit in support of the search warrant does not establish probable cause to search Mr. Guzman-Baez's business. Alternatively, the affidavit includes material omissions and misstatements, without which it would not have established probable cause. The Court must suppress all fruits of the unlawful search of Mr. Guzman-Baez's business or, at least, conduct a *Franks* hearing.

Dated: April 11, 2008

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

/S/

SHAWN HALBERT
Assistant Federal Public Defender

DEFENSE REPLY MOTION TO SUPPRESS
No. CR-07-0794 DLJ, 07-0797 DLJ                    12